GILDEA, Chief Justice.
In this case we are asked to determine whether a seller's fraudulent statements about the condition and fitness of a vehicle being sold prevent the seller from enforcing disclaimers in purchase documents stating that the buyer purchased the vehicle "as is." The court of appeals concluded that under Minn. Stat. § 336.2-316 (2016), the seller's fraudulent statements prevented the seller from enforcing the "as is" disclaimers. The court also concluded that the district court did not err when it awarded relief on both fraud and breach of warranty theories. Because we conclude that fraudulent statements about the fitness of a vehicle for the purpose for which it was purchased make "as is" disclaimers ineffective and Sorchaga did not doubly recovery, we affirm.
FACTS
This action arises from respondent Esmeralda Sorchaga's purchase of a pickup truck from appellant Ride Auto, LLC. Ride Auto purchased the truck from a salvage yard for $6,770, knowing that the truck needed engine repairs. Ride Auto made cosmetic and mechanical repairs sufficient to ensure that the truck would look appealing and drive short distances and then offered it for sale.
Sorchaga was interested in purchasing the truck and took it for a test drive. The length of the test drive was very short because the truck was low on fuel. But during the test drive, Sorchaga noticed that the check-engine light was on. Ride Auto's salesman told Sorchaga that the light was on because the truck had a faulty oxygen sensor. He said that the problem could be easily fixed, and that it would not affect the truck's longevity. The salesman also told Sorchaga that she could drive the truck with the check-engine light on, and if she purchased the truck, she could return to Ride Auto after a couple days to have the truck fixed. Sorchaga also expressed concern about the smoke coming from the tailpipe of the truck. The salesman told her that the truck emitted smoke as it warmed up because the truck had a diesel engine.
Sorchaga asked whether Ride Auto could hook the truck up to a scanner to determine why the check-engine light was on. An owner of Ride Auto stated that Ride Auto could not do that because its mechanic was uncertified. The salesman then told Sorchaga again that a faulty oxygen sensor was the reason the check-engine light was on.
*553 As part of the sales process, Ride Auto told Sorchaga that she would get a third-party warranty, the ASC Vehicle Protection Plan (ASC agreement). Specifically, Ride Auto's owner told Sorchaga that she would be given the ASC agreement at no cost, and it would allow her to have the truck inspected anywhere. The salesman added that the ASC agreement would also cover needed repairs to the truck at no cost to Sorchaga.
In reliance on these statements from Ride Auto, Sorchaga agreed to buy the truck for $12,950.68 and signed a purchase agreement. The agreement stated that the truck had a salvage title and that the check-engine light was on. The agreement disclaimed all warranties and stated that Sorchaga purchased the truck "AS IS, NO WARRANTY." Sorchaga also signed a buyer's guide, which stated that the truck was sold "AS IS-NO WARRANTY." She also signed a handwritten addendum on the purchase agreement noting the vehicle's check engine light was illuminated and the vehicle had a salvage title.
Immediately after Sorchaga purchased the truck, she experienced problems with it. For example, the truck would not travel faster than 40 miles an hour, and Sorchaga was stopped by police while she was driving the truck because it emitted "excessive smoke." When Sorchaga returned to Ride Auto for assistance, Ride Auto refused to repair the truck, even though Sorchaga came back within just a few days of her purchase. And when she called ASC, Sorchaga was told that the warranty in the ASC agreement she had been provided did not apply because the truck was a salvage vehicle.
Eight days after purchase, Sorchaga had the truck towed to a dealer and inspected, at a cost of $1,415. The dealer concluded the truck should not be driven, and recommended a full engine replacement at a cost of approximately $20,000.
After Sorchaga received the results from the dealer's inspection of the truck, she brought this action against Ride Auto and its surety bond holder, Western Surety Company. Sorchaga alleged breach of the implied warranty of merchantability, violation of the federal Magnuson-Moss Warranty Act,[1] and fraud. Ride Auto and Western moved for summary judgment, arguing that Sorchaga was not entitled to any relief based on the disclaimer of warranty language in the purchase agreement, her opportunity to inspect the vehicle, and the repeated statements in the purchase agreement and the ASC agreement that Sorchaga understood she was buying the truck "as is." The district court denied the motion for summary judgment, and the case proceeded to trial before the court.
At the completion of trial, the district court ordered judgment for Sorchaga on all counts. The court found that "[t]he employees of Ride Auto made misrepresentations and false representations to [Sorchaga] with respect to the condition, value, quality or fitness of the truck for any purpose for which a truck is purchased." Specifically, the court found that Ride Auto's owner knew that the truck had serious engine damage, but that he did not correct his salesman's statements that a faulty oxygen sensor was the reason the check-engine light was on. The court also found that "[t]he employees and owners of Ride Auto made knowingly false representations to the plaintiff as to the issues with *554 the truck and how the ASC Warranty would cover those issues, even though they were aware that the ASC Warranty did not cover a vehicle with salvaged title." The court awarded Sorchaga $14,366.03 in damages based on the price she paid for the truck and the cost of the dealer's inspection, and $21,949.35 in attorney fees and litigation expenses.
Ride Auto and Western appealed, and the court of appeals affirmed. Sorchaga v. Ride Auto, LLC , 893 N.W.2d 360, 380 (Minn. App. 2017). With respect to the breach of implied warranty claim, the court of appeals considered "[w]hether a merchant's fraudulent misrepresentation about the condition of goods to a consumer precludes the merchant from disclaiming the implied warranty of merchantability." Id. at 373. The court construed Minn. Stat. § 336.2-316 to include fraud as a "circumstance" that prevents exclusion of the implied warranty of merchantability, notwithstanding "as is" language. Id. at 375. The court also rejected Ride Auto and Western's argument that the district court improperly awarded relief to Sorchaga on both fraud and contract theories. Id. at 377-78. We granted Ride Auto and Western's petition for review on both of these issues.[2]
ANALYSIS
On appeal, Ride Auto and Western argue that the court of appeals erred in concluding that fraud prevented them from enforcing the disclaimers of warranties in the purchase documents. They also contend that the district court erred in awarding Sorchaga damages under both fraud and breach of warranty theories. We consider each issue in turn.
I.
We turn first to Ride Auto and Western's argument that the disclaimers in the purchase documents stating that Sorchaga purchased the truck "as is" bar her recovery. The court of appeals rejected this contention based on its interpretation of Minn. Stat. §§ 336.2-314 and 336.2-316 (2016). Minnesota Statutes § 336.2-314 implies a warranty of merchantability in all contracts for the sale of goods unless the parties exclude or modify the implied warranty. Parties may exclude the implied warranty of merchantability with a written and conspicuous disclaimer. Minn. Stat. § 336.2-316(2). Such a disclaimer is far-reaching: "unless the circumstances indicate otherwise , all implied warranties are excluded by expressions like 'as is.' " Minn. Stat. § 336.2-316(3)(a) (emphasis added). The purchase agreement noted three times that Sorchaga purchased the truck "as is." And the buyer's guide that Sorchaga signed also stated that she purchased the truck "as is." The question here is whether Ride Auto's fraud is a "circumstance" that "indicate[s] otherwise," thus making the "as is" disclaimer ineffective.
The parties disagree on the meaning of "unless the circumstances indicate otherwise," Minn. Stat. § 336.2-316(3)(a). Ride Auto and Western argue that the clause is unambiguous and refers only to circumstances that may contradict or limit the "as is" language that follows. Specifically, they assert that the circumstances the statute addresses are limited to those used to show that the parties did not intend to *555 exclude all warranties in spite of "as is" language.[3] Sorchaga contends that the phrase is ambiguous because the UCC does not define what circumstances prevent exclusion of implied warranties. She further contends that the statutory language provides no context for what circumstances may indicate that an implied warranty was not excluded by a disclaimer. Therefore, Sorchaga asserts, the phrase should be construed to include all of the circumstances surrounding the transaction, including a seller's fraudulent statement.
The parties' dispute presents an issue of statutory interpretation that we review de novo. Lee v. Lee , 775 N.W.2d 631, 637 (Minn. 2009). When interpreting a statute, we first ask whether its language is clear and free from ambiguity. Gilbertson v. Williams Dingmann, LLC , 894 N.W.2d 148, 151 (Minn. 2017) ; see also Minn. Stat. § 645.16 (2016). When the language of a statute is clear and free from ambiguity, our role is simply to "apply the plain meaning of the statute." State Farm Mut. Auto. Ins. Co. v. Lennartson , 872 N.W.2d 524, 534 n.6 (Minn. 2015) (citing In re Reichmann Land & Cattle, LLP , 867 N.W.2d 502, 511 (Minn. 2015) ). The words of a statute are ambiguous only "if, as applied to the facts of the particular case, they are susceptible to more than one reasonable interpretation." Staab v. Diocese of St. Cloud , 813 N.W.2d 68, 73 (Minn. 2012)
The statute does not define the "circumstances" that the Legislature intended would make "as is" disclaimers ineffective. In the absence of a definition in the statute, we often consult dictionary definitions to ascertain "the plain and ordinary meanings of words or phrases." Troyer v. Vertlu Mgmt. Co. , 806 N.W.2d 17, 24 (Minn. 2011). The words "unless," "indicate," and "otherwise" all have narrow meanings. The definition of "unless" is "except on condition that." Webster's Third New International Dictionary 2503 (3rd ed. 1971). "Indicate" is defined as "to show or make known" and "to point out or point to." Webster's Third New International Dictionary 1150 (3rd ed. 1971). "Otherwise" means "in other respects" and "in a different way or manner." Webster's Third New International Dictionary 1598 (3rd ed. 1971). But "circumstance" is broadly defined to mean "a specific part, phase, or attribute of the surroundings or background of an event, fact, or thing or of the prevailing conditions in which it exists or takes place." Webster's Third New International Dictionary 410 (3rd ed. 1971). "Circumstances" could then apply to a number of different conditions or facts connected with or surrounding the transaction at issue.
We need not identify all of the circumstances that the statute covers or determine whether there is ambiguity in all of the statute's applications because the statute as applied to the facts of this case is not ambiguous. Here, the district court found that Ride Auto made fraudulent statements about the "condition, value" and "fitness" of the truck "for any purpose for which a truck is purchased." Fraudulent statements such as these, which result in the purchase of a good that cannot be used for the purpose for which it was purchased, are certainly "a specific part ... or attribute of the surroundings or *556 background of" the parties' transaction. Webster's Third New International Dictionary 410 (3rd ed. 1971). And such statements indicate that the "as is" disclaimers are not enforceable. In other words, the fraud here is a "circumstance[that] indicate[s] otherwise" under Minn. Stat. § 336.2-316(3)(a).
This is so because, if the disclaimers were enforceable, the very essence of the parties' bargain would be negated. As the district court found, Sorchaga relied on Ride Auto's fraudulent statements and purchased a truck that was not fit for "any purpose for which a truck is purchased." To permit Ride Auto to nevertheless enforce the "as is" disclaimers in this situation would permit Ride Auto "to profit from [its] fraud and to be effectively granted a license to mislead or conceal facts." Murray v. D & J Motor Co. , 958 P.2d 823, 830 (Okla. Ct. App. 1998) (holding that "fraudulent representations or misrepresentations concerning the condition, value, quality, characteristics or fitness of the good sold that are relied upon by the [b]uyer to the [b]uyer's detriment" are among the circumstances that could render a purported "as is" or "with all faults" disclaimer unreasonable and ineffective); see also 3A David Frisch, Lawrence's Anderson on the Uniform Commercial Code § 2 -316:155 (3d ed. 2014) (citing Murray and noting that "[a]mong the circumstances that could render a purported 'as is' ... disclaimer ... ineffective are fraudulent representations ... concerning the condition, value, quality, characteristics or fitness of the goods sold that are relied upon by the buyer to the buyer's detriment").
Concluding that the fraud the district court found here is a "circumstance" under Minn. Stat. § 336.2-316 is also consistent with other provisions of the UCC. State v. Randolph , 800 N.W.2d 150, 156 (Minn. 2011) (looking to other provisions in the same chapter to support an unambiguous interpretation). The drafters of the UCC made clear that they did not intend to preclude application of common-law principles, such as fraud, to the sale of goods. See Minn. Stat. § 336.1-103(b) (2016) ("[U]nless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including ... fraud, misrepresentation ... and other validating or invalidating causes supplement its provisions.").[4]
But, Ride Auto and Western argue, if we determine that fraud is a "circumstance" for purposes of Minn. Stat. § 336.2-316, there will be no effective way for parties to contractually waive or limit warranties. We disagree. This case involves fraud. We express no opinion about other cases not before us, but not all misstatements will constitute fraud. See Valspar Refinish, Inc. v. Gaylord's, Inc. , 764 N.W.2d 359, 368 (Minn. 2009) (listing elements of fraud).[5] And simply because the *557 UCC permits parties to exclude or modify warranties does not mean that Ride Auto can "disclaim its obligation to deliver the product which formed the basis of the parties' bargain." Blankenship v. Northtown Ford, Inc ., 95 Ill.App.3d 303, 50 Ill.Dec. 850, 420 N.E.2d 167, 171 (1981) (holding that technical compliance with section 2-316 is insufficient to disclaim a warranty where the auto dealer misrepresented the condition of a vehicle). Given the district court's findings, it is clear that, but for Ride Auto's fraudulent statements, Sorchaga would not have purchased the truck.
Based on our analysis, we hold that Ride Auto's fraudulent statements about the fitness of the truck for the purpose for which a truck is purchased are a circumstance that make the "as is" disclaimers of implied warranties in the purchase documents ineffective under Minn. Stat. § 336.2-316(3)(a).
II.
We turn next to Ride Auto and Western's argument that the district court erred in awarding relief to Sorchaga under both fraud and breach of warranty theories. Ride Auto and Western assert that even if the "as is" disclaimer of warranties was ineffective, fraud and breach of warranty are mutually exclusive and Sorchaga cannot recover under both theories. Sorchaga, by contrast, contends that under the UCC, rescission of a contract for fraud does not result in the renunciation of other warranty claims.
Sorchaga is correct that the UCC provides that rescission of a contract does not result in a renunciation of a claim for damages for breach of warranty. See Minn. Stat. § 336.2-720 (2016). Furthermore, in the section entitled "Remedies for Fraud," the statute specifically provides that rescission of the contract or return of the goods due to fraud is not inconsistent with a claim for damages or any other remedy . See Minn. Stat. § 336.2-721 (2016) (emphasis added). Under the UCC then, a party may seek remedies for fraud, including breach of warranty, even after the rescission of a purchase contract.
In urging us to reach the opposite conclusion, Ride Auto and Western rely on cases that stand for the proposition that fraud vitiates a contract and therefore voids all warranties. See Freeman v. Duluth Clinic, Ltd. , 334 N.W.2d 626, 629 (Minn. 1983) ("[F]raud in the inducement, if proved, would vitiate the parties' contract."); Meland v. Youngberg , 124 Minn. 446, 145 N.W. 167, 170 (1914) (explaining that "fraud vitiates all contracts"); Hunter v. Cleveland Coop. Stove Co. , 31 Minn. 505, 18 N.W. 645, 646 (1884) (explaining that "fraud vitiates" judgements as well as contracts). Common-law fraud vitiates a contract in the sense that fraud renders a contract voidable. See Graves v. Wayman , 859 N.W.2d 791, 811-12 (Minn. 2015) ; Hatch v. Kulick , 211 Minn. 309, 1 N.W.2d 359, 360 (1941). A party may rescind a voidable contract as a remedy for fraud, but is not obligated to do so. See Graves , 859 N.W.2d at 812-13. In this case, even if Sorchaga had elected rescission, Ride Auto and Western point to no case law that compels the conclusion that a finding of fraud preempts any other remedy given under the UCC.
Moreover, we have held that so long as the plaintiff is not allowed "double recovery," a district court may conclude that the evidence supports separate claims for both common-law fraud and breach of contract.
*558 See Specialized Tours, Inc. v. Hagen , 392 N.W.2d 520, 533 (Minn. 1986) ; see also McDonald v. Johnson & Johnson , 776 F.2d 767, 770 (8th Cir. 1985) ("[C]ourts agree that fraud in inducing a contract and a later breach of that contract represent two distinct causes of action under Minnesota law."). Sorchaga did not receive a double recovery. She recovered damages for the purchase price of the truck plus the amount she paid for the dealer's inspection of the truck. The district court also awarded Sorchaga attorney fees and costs under the Magnuson-Moss Warranty Act for a breach of an implied warranty. See 15 U.S.C. § 2310(d)(2) ("[A prevailing party] may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended)....").
Based on our analysis, we hold that the district court did not err in awarding recovery to Sorchaga on claims for fraud and breach of warranty.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.

15 U.S.C. §§ 2301 -12 (2012). This statute supplements state law by prescribing federal requirements for certain warranties, prohibiting their disclaimer in certain circumstances, and affording a federal remedy for their breach. See Richardson v. Palm Harbor Homes, Inc. , 254 F.3d 1321, 1325 (11th Cir. 2001).

Ride Auto and Western also urge reversal of the district court's finding of fraud, contending that there was not sufficient evidence to support a finding of fraud. But we did not grant review of the question of whether fraud was proven and therefore we decline to address it. See Sorchaga v. Ride Auto, LLC , No. A16-0855, Order at 1 (Minn. filed June 20, 2017).

Ride Auto and Western also argue that because fraud is not mentioned in the statute, legislative intent to exclude it can be inferred from its omission. See Olson v. Olson , 534 N.W.2d 547, 550 (Minn. 1995) (noting that the court cannot supply to a statute language that the Legislature omitted). But the statute does not list any specific type of "circumstance" that would make a disclaimer ineffective. Our task is not to add words to the statute but to determine what the words used in the statute mean.

Ride Auto and Western contend that in Nick Mikalacki Const. Co. v. M.J.L. Truck Sales, Inc. , 33 Ohio App.3d 228, 515 N.E.2d 24 (1986), the court identified only three circumstances where a warranty disclaimer is ineffective and that, because none of those circumstances exist here, the "as is" disclaimers are effective. That case is inapposite because it does not involve or address fraud.

Relying on the parol evidence rule, Ride Auto and Western also argue that oral statements, such as those the district court relied on in finding fraud, cannot be "circumstances" under Minn. Stat. § 336.2-316(3)(a). This issue is not properly before us because we denied review of the district court's determination of fraud. But, in any event, we have held that fraudulent statements or misrepresentations are an exception to the parol evidence rule. Hanson v. Stoerzinger , 299 N.W.2d 401, 404 n.4 (Minn. 1980) ; Martin v. Guarantee Reserve Life Ins. Co. , 279 Minn. 129, 155 N.W.2d 744, 748-49 (1968) (citing Hafner v. Ritzinger , 256 Minn. 196, 97 N.W.2d 839, 842 (1959) ; Ganley Bros. v. Butler Bros. Bldg. Co. , 170 Minn. 373, 212 N.W. 602, 602 (1927) ).